DUTY FREE INTERNATIONAL, INC., AMMEX WAREHOUSE CO., INC., AND
AMMEX TAX & DUTY FREE SHOPS, INC., PLAINTIFFS *v.* UNITED STATES,
DEFENDANT

Court No. 91–07–00534

(Decided December 29, 1993)

*Tompkins & Davidson (Harvey A. Isaacs, Brian S. Goldstein* and *Laurence M. Friedman),* for plaintiffs.
*Frank W. Hunger,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Susan Burnett Mansfield), Christopher Doherty,* United States Customs Service, of counsel, for defendant.

## OPINION

DICARLO, *Chief Judge:* Plaintiffs, operators of a duty-free store near the Canadian border in New York State, seek revocation of the approval by the United States Customs Service of the application by Git-N-Go ("GNG") to establish a duty-free store in the same vicinity. Plaintiffs allege that Customs' decision to approve GNG's application was arbitrary, capricious, an abuse of discretion, and not in accordance with law. Alternatively, plaintiffs request that the court remand the case to Customs for a redetermination of GNG's application. Plaintiffs also seek a declaratory judgment as to the meaning of certain terms used in 19 U.S.C. § 1555(b)(1988).

The court has jurisdiction under 28 U.S.C. § 1581(i). Plaintiffs and defendant have both moved for summary judgment pursuant to USCIT R. 56. The court finds that the record provides an insufficient basis for the court to review Customs' determination. Accordingly, the parties' cross motions for summary judgment are denied. The action is remanded to the District Director of Customs to compile the full administrative record in this matter, and to provide the court with a more complete explanation for his decision.

## BACKGROUND

Plaintiffs operate a duty-free store on the East Service Road of Interstate Route 87 (I–87) near the Canadian border in Champlain, New York. The store is located immediately opposite Exit 43, which is the last exit off I–87 before the Canadian border. The distance between Exit 43 and the Customs port building at the Canadian border is approximately $3/4$ of a mile. Once a vehicle from the East Service Road enters the northbound on-ramp of I–87, its only alternative to proceeding into Canada is to make an illegal U-turn on the highway.

On August 23, 1988, Congress adopted the Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100–418, 102 Stat. 1107, which in-

cluded provisions regulating the establishment of duty-free sales enterprises. Prior to the 1988 Act, duty-free stores were not governed by statute, but rather by Customs' administrative directives. Under the Act, duty-free stores are required to provide reasonable assurance of exportation of the duty-free merchandise sold by them. For that purpose, a duty-free store at the border must deliver duty-free merchandise "at a merchandise storage location at or beyond the exit point," unless the location was approved before the date of enactment of the Act. 19 U.S.C. § 1555(b)(3)(F). Because plaintiffs' store was approved before the date of enactment of the Act, it was grandfathered under the statute.

GNG's site is also located on the East Service Road at a distance south of plaintiffs' store. Thus, it is located further from the border. Unlike plaintiffs, GNG did not receive approval to operate its duty-free store until after enactment of the Omnibus Trade and Competitiveness Act of 1988. Therefore, GNG's operation must comply with the terms of the Act.

On July 16, 1990, GNG filed a letter application with the District Director, describing its proposed merchandise delivery procedure. Pls.' Br. Ex. G (Letter to District Director of Customs, from Matthews, Git-N-Go, dated July 16, 1990). Under this procedure, after a customer makes a purchase from GNG, the merchandise is taken from the store by a Customs bonded cartman and delivered to the purchaser at a point between the GNG store and plaintiffs' store, approximately $^{2}/_{10}$ of a mile south of the entrance to I–87. The cartman then advises the purchaser that the goods must be exported to Canada and watches the purchaser's vehicle until it enters the northbound on-ramp of I–87. On July 18, 1990, Customs' Port Director informed Git-N-Go that the outlined procedure "would meet basic export requirements." Def.'s Br. App. at 6 (Letter to Matthews, Git-N- Go, from C.J. Krul, Area Port Director, dated July 18, 1990). On May 20, 1991, Customs approved GNG's application, contingent upon continued adherence to the delivery procedures approved by Port Director Krul. Def.'s Br. App. at 7 (Letter to Matthews, Git-N- Go, from Walgreen, Director of Inspection & Control, dated May 20, 1991).

Following approval under the terms described above, GNG proposed, as an alternate method of delivery, that it be permitted to deliver the merchandise at the GNG store in a cordoned area of its parking lot, and have the bonded cartman escort all vehicles containing merchandise to the northbound on-ramp of I–87. Pls.' Br. Ex. G (Letter to Walgreen, Director of Inspection & Control, from Spiegel, Trans-Border Customs Service, Inc., dated October 1, 1991). To assist in consideration of this proposed alternate delivery procedure, the District Director requested internal advice from Customs Headquarters. Customs Headquarters issued a ruling on March 18, 1992, holding that the proposed alternate delivery procedure did not comply with the statutory requirement that duty-free merchandise must be delivered "at or beyond the exit point." Pls.' Br. Ex. H (Letter to District Director from Durant, Director of Com-

mercial Rulings Division of Customs, HQ 223751, dated March 18, 1992).

At issue is whether Customs' approval of GNG's current delivery procedure is consistent with the requirement of 19 U.S.C. § 1555(b) that a duty-free store must deliver duty-free merchandise at "a merchandise storage location at or beyond the exit point."

## DISCUSSION

### 1. *Standard and Scope of Review:*

In an action brought under 28 U.S.C. § 1581(i), the court is required to review the matter as provided in 5 U.S.C. § 706. 28 U.S.C. § 2640(d) (1988). Under Section 706, the court shall hold unlawful and set aside an agency's decision found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. In making this determination, the court shall review the whole record or those parts of it cited by a party. 5 U.S.C. § 706 (1988).

Summary judgment is granted if "there is no genuine issue as to any material fact and * * * the moving party is entitled to judgment as a matter of law." *See* USCIT R. 56(d). The summary judgment procedure generally is appropriate in cases in which the court is asked to review a decision of an administrative agency. Since the agency, in most cases, is the fact finder, the court simply takes the facts as found by the agency and determines whether the administrative action is consistent with law. *See* 10 A Wright, Miller & Kane, Federal Practice and Procedure § 2733 (2d ed. 1983). However, summary judgment may not be appropriate where the case is one of first impression and the potential impact of the decision is uncertain. *See id.* § 2725. In that situation, a more complete development of the record may be necessary in order for the court to properly apply the law.

Here, the court is called upon to determine, for the first time, the propriety of Customs' application of the statute regulating duty-free stores. Given the novelty and potential impact of the action, the court finds that a further development of the record is necessary to clarify the facts and to determine the propriety of Customs' application of the law to the facts presented. In addition, without a more complete record, the court is unable to determine the merits of the case under the applicable standard of review provided in 5 U.S.C. § 706. Accordingly, the court denies the parties' cross motions for summary judgment.

### 2. *Whether GNG's delivery is "at or beyond the exit point":*

The statute governing the establishment of duty-free stores provides: Each duty-free sales enterprise—

(A) shall establish procedures to provide reasonable assurance that duty-free merchandise sold by the enterprise will be exported from the customs territory; * * * and

\*        \*        \*        \*        \*        \*        \*

(F) shall deliver duty-free merchandise—

\*       \*       \*       \*       \*       \*       \*

(ii) in the case of a duty-free sales enterprise that is a border store—

> (I) *at a merchandise storage location at or beyond the exit point; or*
> (II) at any location approved by the Secretary before the date of enactment of the Omnibus Trade Act of 1987 [sic].

19 U.S.C. § 1555(b)(3) (emphasis added).

Plaintiffs assert that GNG's delivery location is not "at or beyond the exit point"—i.e. Exit 43—because that location is $^2/_{10}$ of a mile south of the Exit. Defendant contends, however, that Customs' approval of GNG's current delivery procedure constitutes the agency's interpretation of a statute it is charged with implementing and, as such, is entitled to considerable deference. According to defendant, the statute only requires that a duty-free store provide "reasonable assurance" of exportation, not an absolute guarantee of exportation. In its view, GNG's current delivery procedure meets that requirement.

When the court reviews an agency's construction of a statute which it administers, it must first determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–3 (1984) (footnote omitted).

In determining whether Congress has directly spoken to the question at issue, the court looks first to the statutory language. If the statutory language is unclear, the court then attempts to discern Congress' intent from the legislative history of the statute. *Blum v. Stenson,* 465 U.S. 886, 896 (1984).

A review of the relevant portions of the statute does not reveal what Congress intended when it required that duty-free merchandise be delivered "at or beyond the exit point." 19 U.S.C. § 1555(b)(3)(f)(ii)(I). The statute defines the term "exit point" as "the area in close proximity to an actual exit for departing from the customs territory." 19 U.S.C. § 1555(b)(8)(F). However, it fails to define "in close proximity to an actual exit" and the term "at or beyond."

Since the statute is not unambiguous on its face, the court must look to the legislative history for assistance in determining the meaning of these terms. The Senate Report of the Omnibus Trade and Competitiveness Act of 1988 provides the following guidance:

> Delivery of duty-free merchandise in the case of border stores would be permitted only at a merchandise storage location at or beyond the exit point. This limitation is necessary because *unless duty-free merchandise is delivered at a point at which the departing*

*purchaser has no alternative but to leave the United States, there is no feasible way to assure that the goods are exported.*

S. Rep. No. 100–71, 100th Cong., 1st Sess., 233 (1987) (emphasis added).

It appears from the above that delivery of duty-free merchandise should take place "at a point at which the departing purchaser has no alternative but to leave the United States." Unless duty-free merchandise is delivered at such a point, "there is no feasible way to assure that the goods are exported." *Id.* This indicates the understanding of the drafters of the Senate Report as to what would constitute "reasonable assurance" of exportation at a delivery location. If the court were to accept this as the intent of Congress, the court, as well as the agency, would be required to give effect to it. *Chevron,* 467 U.S. at 843.

Customs has given effect to the position taken in the Senate Report. A reading of Customs' regulations implementing 19 U.S.C. § 1555(b)(8)(F) reveals a definition of the term "exit point" that is nearly identical to the definition indicated in the above Senate Report. The regulations provide, in pertinent part:

The exit point in the case of a land border * * * is the point at which a departing individual has *no practical alternative* to continuing on to a foreign country or to returning to Customs territory by passing through a U.S. Customs inspection facility.

19 C.F.R. § 19.35(d) (1993) (emphasis added). The court notes that the regulations were published in proposed form, but were not in effect when GNG's application was approved.[1] Nonetheless, defendant acknowledges that the draft regulations constituted Customs' interpretation of the statute at the time of the approval of GNG's application.

It appears from the foregoing that the question of whether it was properly determined that GNG's delivery location is "at or beyond the exit point" could be answered if the court was able to discern, from the record before it, whether a purchaser at that location has a practical alternative to leaving the country. The parties offer differing responses to this question.

Plaintiffs allege that such an alternative exists. In particular, a vehicle can avoid entering the northbound on-ramp at Exit 43 of I–87 by passing the Exit, turning around at the dead end of the East Service Road, and proceeding south along the East Service Road, thereby never leaving the United States. Alternatively, plaintiffs maintain, a GNG customer can drive into the parking lot of plaintiffs' store located opposite Exit 43, and later exit the parking lot and proceed south along the East Service Road without being monitored by a GNG cartman, again never leaving the United States.

---

[1] The regulations were published in proposed form on May 17, 1991, 56 Fed. Reg. 22,833 (1991), and became effective on October 19, 1992. 58 Fed. Reg. 29,349 (1993).

Defendant concedes such possibilities exist,[2] but denies that these possibilities constitute a "practical alternative" to leaving the country, within the meaning of the statute. According to defendant, the court should defer to the agency's application of the statute and regulations unless it finds the application lacks a rational basis in fact.

In order to determine whether deference is proper under these circumstances, the court must look to the record. The May 20, 1991 letter from the Director of Inspection & Control merely states that Customs' approval is conditioned on GNG's "continued adherence to the merchandise delivery procedures approved by Area Port Director Casimir Krul in his memorandum dated July 18, 1990." Def.'s Br. App. at 7 (Letter to Matthews from Walgreen, dated May 20, 1991). Mr. Krul's memorandum dated July 18, 1990 contains only one sentence: "Your outlined procedures for the purpose of a Duty Free Operation located on the East Service Road of I–87 would meet basic export requirements." Def.'s Br. App. at 6 (Letter to Matthews from Krul dated July 18, 1990).

The sparse record before the court does not allow the court to determine whether Customs' application lacks a rational basis in fact, because it does not disclose the basis of Customs' approval of GNG's current delivery procedure. Without such disclosure, the court is unable to determine whether the decision was based on "a consideration of the relevant factors" and whether there was "a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971).

The court finds that the ruling letter subsequently issued by Customs Headquarters regarding GNG's proposed alternate delivery procedure sheds light on the relevant factors that should be considered in determining whether GNG's current delivery procedure complies with the statute. Pls.' Br. Ex. H (Letter to District Director from Durant, dated March 18, 1992). Under GNG's proposed alternate delivery procedure, duty-free merchandise would have been delivered to the purchasers in the parking lot of the GNG store. Then, a bonded cartman would have followed the vehicles to the northbound on-ramp of Exit 43 and observe them proceeding onto the Interstate. Customs Headquarters held that this procedure would not comply with the statute.

This holding was based on two grounds. First, noting the District Director's finding that "persons who receive merchandise in the GNG parking lot have the ability not to depart the United States," *id.* at 1, the ruling letter concluded that GNG's parking lot does not constitute a storage location "at or beyond the exit point." *Id.* at 2–3. Second, the ruling letter reasoned:

> *Customs does not have any statutory authority to enforce GNG's monitoring of the delivery process.* In other words, if GNG were to stop escorting the purchaser's vehicle to the entrance ramp of Exit

---

[2] In its pleading, defendant denies plaintiffs' allegation that a practical alternative exists for a departing purchaser from the GNG store "to the extent the allegation may be deemed an allegation of fact." Answer paragraphs 14, 15. However, defendant conceded at the court conference held on November 30, 1993, that it is possible for a departing purchaser to make a U turn and not to depart the United States at GNG's delivery location. Tr. at 18.

43, Customs would have no legal recourse against GNG either under the statute or under the bond. As a bonded warehouse operator, GNG is only required to comply with all regulations regarding the receipt and safekeeping of the bonded merchandise. Therefore, Customs would have to rely on GNG's voluntary compliance with this procedure. * * * *Also, GNG does not have a financial incentive to report persons who fail to depart the U.S. since GNG, as the importer, would then become liable for duties.*

*Id.* at 3 (emphasis added).

It appears to the court that Headquarters' reasoning with regard to the proposed alternate delivery procedure would be applicable to GNG's current delivery procedure. The court is aware that GNG's parking lot is located further away from Exit 43 than GNG's current delivery location. Nevertheless, at both locations, purchasers have the ability not to depart the United States, and both procedures rely on a cartman's monitoring of purchasers' departure. If "Customs does not have any statutory authority to enforce GNG's monitoring" in the proposed alternate delivery procedure, what authority does Customs have to enforce GNG's monitoring in the current delivery procedure? Does GNG have a financial incentive in the current delivery procedure, which is not present in the proposed alternate delivery procedure, to report persons who fail to depart the United States? In sum, the court finds it difficult to understand why the enforcement problems that prevented Customs from approving the proposed alternate delivery procedure do not apply with equal force to the current delivery procedure.

The District Director is permitted to seek Headquarters advice in making his decision as to what constitutes the exit point or reasonable assurance of exportation, *see* 19 C.F.R. § 19.35(d), as he did regarding GNG's proposed alternate delivery procedure. The court notes that no request for Headquarters opinion was made with respect to GNG's current delivery procedure. Moreover, the ruling letter specifically stated that the ruling is "not to be considered as ratification of the approval" given to the current procedures. Instead, the ruling letter proceeded on the assumption that the approval "comes within the express language" of the statute, and does not consider that prior approval. Since Congress enacted 19 U.S.C. § 1555(b) to "encourage uniformity and consistency of regulation of duty-free sales enterprises," Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100–418, 102 Stat. 1107, 1315, and in the interest of uniform application of the statute, the court remands the case to the District Director with the instruction that he seek internal advice from Customs Headquarters regarding GNG's current delivery procedure and that Headquarters address the concerns and questions raised in this opinion.

3. *"Merchandise storage location":*

In addition to delivery "at or beyond the exit point," the statute further requires that a duty-free store shall deliver duty-free merchandise "at a merchandise storage location." 19 U.S.C. § 1555(b)(3)(F)(ii)(I).

Plaintiffs contend that the vehicle used by GNG for transportation and immediate delivery of duty-free merchandise cannot be rationally construed as a "merchandise storage location."

The term "merchandise storage location" is not defined by the statute. Nor does the legislative history of the statute provide any explanation as to the meaning of the term. When Congress has not directly addressed the precise question at issue, the court does not simply impose its own interpretation. *Chevron,* 467 U.S. at 843. "Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* (footnotes omitted).

Defendant asserts that it is Customs' interpretation that delivery may be made by a cartman if the District Director is provided with proper assurances of exportation. To support its position, defendant draws an analogy between a cartman's vehicle and a "crib location" which is provided for within Customs regulations. *See* 19 C.F.R. § 119.37(a). Plaintiffs contend that defendant's analogy amounts to a *post hoc* rationalization for Customs' approval of GNG's application.

It is well settled that the court may not accept counsel's *post hoc* rationalizations for agency action. *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 (1962). "The grounds upon which an administrative order must be judged are those upon which the record discloses that [agency] action was based." *SEC v. Chenery Corp.,* 318 U.S. 80, 87 (1943). Once again, however, the record before the court does not disclose the grounds upon which Customs' decision was based. Consequently, the court is unable to determine whether Customs properly applied the term "merchandise storage location" in this situation. Therefore, the court remands the case to the District Director for him to explain why a cartman's vehicle used solely for transportation and delivery of duty-free merchandise was considered within the meaning of "a merchandise storage location" under the statute.

CONCLUSIONS

The record submitted by the parties is insufficient for the court to review Customs' decision by the applicable standard of review. Accordingly, the court denies plaintiffs' motion and defendant's cross motion for summary judgment. The case is remanded to the District Director to submit a more complete agency record pertaining to the approval of GNG's current delivery procedure and to provide an adequate explanation for the approval. In the interest of uniform application of the statute, the court directs the District Director to seek internal advice from Customs Headquarters regarding the following questions:

(1) Whether a "practical alternative" within the meaning of 19 C.F.R. § 19.35(d) exists for a purchaser of duty-free merchandise at GNG's delivery location where the purchaser has the ability to not depart the United States and the assurance of exportation depends upon a cartman's monitoring of the purchaser's departure. If the answer is that

no practical alternative exists, then Customs is directed to explain the differences between the cartman's monitoring in this situation and that in GNG's proposed alternate delivery procedure, in view of Headquarters ruling letter, HQ 223751.

(2) Whether a cartman's vehicle used to transport duty-free merchandise from a warehouse to a location for immediate delivery to the purchaser is within the meaning of "a merchandise storage location" under 19 U.S.C. § 1555(b)(3)(F)(ii)(I).

Defendant shall file its remand results within 60 days of this opinion. Plaintiffs shall file a motion for judgment upon an agency record pursuant to USCIT R. 56.1 within 30 days thereafter. Defendant's response and plaintiffs' reply thereto shall be filed in accordance with USCIT R. 56.1(d).